[Cite as *State v. Caplette*, 2018-Ohio-3285.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27805 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-151 |
| | : | |
| ZACHARY R. CAPLETTE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of August, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Atty. Reg. No. 0095826, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

CHRISTOPHER C. GREEN, Atty. Reg. No. 0077072, 130 West Second Street, Suite 830, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Zachary Caplette appeals his conviction and sentence for one count of burglary (habitation/person present or likely to be present), in violation of R.C. 2911.12(A)(2), a felony of the second degree. Caplette filed a timely notice of appeal with this Court on November 14, 2017.

{¶ 2} The incident which forms the basis for the instant appeal occurred during the early morning hours of January 12, 2017, when Caplette went to the residence of a friend from school, co-defendant Evan Doling. Caplette testified that he and Doling drank alcohol, smoked marijuana, and ingested the prescription medication Xanax. At approximately 3:30 a.m., Caplette and Doling decided to go for a walk. Caplette testified that at some point while they were walking, the pair observed a shed in a wooded area behind a nearby neighborhood. Caplette testified that Doling entered the shed and removed some items from inside. Caplette testified that he also entered the shed and took a hatchet. Caplette and Doling then placed all of the stolen items by a nearby tree and continued walking.

{¶ 3} Caplette testified that after walking around for a while longer, he and Doling came upon a house. Caplette testified that Doling approached the front of the house and tried to open the front door, but the door was locked. Thereafter, Caplette and Doling walked until they arrived in the backyard of the Lis residence located in Washington Township, Montgomery County, Ohio. Caplette testified that Doling looked through a glass door on the back of the house and observed a cooler on the floor inside filled with wine bottles. At this point, Doling was able to gain entry into the house through a dog door. Once inside, Doling began taking wine bottles out of the cooler and handing them

to Caplette through the dog door.

{¶ 4} At approximately 6:00 a.m. on January 12, 2017, R.L. was sleeping in the basement of his parents' house in Washington Township when he was awoken to the sound of glass bottles clinking together. When R.L. went to investigate the sound, he observed an individual, later identified as Doling, inside his home passing wine bottles through the dog door to another individual, later identified as Caplette, standing outside the house. R.L. testified that he attempted to grab Doling. Doling, however, was able to crawl back outside using the dog door. R.L. then observed Doling and Caplette jump over the fence surrounding the backyard and flee into the woods. R.L.'s father, M.L., was awoken by the sounds of the struggle. After R.L. explained what had happened, M.L. called the police.

{¶ 5} Approximately five minutes later, Deputy Timothy Kim from the Montgomery County Sherriff's Office arrived at the victims' residence with Deputy Sears. After explaining the situation, M.L. led the deputies through the backyard to where R.L. had observed Doling and Caplette jump over the fence and run into the woods. Accompanied by M.L., the deputies followed the path into the woods that they believed the suspects had taken. M.L. testified that he and the deputies discovered a baseball cap and two of the recently stolen bottles of wine, which had been dropped at the bottom of a small ravine near the victims' residence. We note that Caplette later admitted during a police interview that the baseball cap found in the ravine belonged to him. M.L. testified that while they were in the ravine, he and the deputies heard two people yelling nearby.

{¶ 6} At approximately 7:00 a.m., M.L. and the deputies exited the woods back onto the street, where they observed Caplette and Doling walking on the sidewalk;

Caplette and Doling were "pretty wet from the mud and everything."  M.L. testified that he informed the deputies that he did not recognize either individual as anyone who lived in the neighborhood.  M.L. also testified that, when Deputy Kim approached the suspects and asked them what they were doing, Caplette and Doling responded that they "were out practicing MMA [fighting] * * * in the neighborhood."

{¶ 7} Shortly thereafter, the deputies transported R.L. to the scene where Caplette and Doling were being detained.  Once there, R.L. identified Doling as the individual he observed inside the house passing bottles of wine through the dog door.  The other individual was eventually identified as Caplette.  Caplette was arrested and taken into custody.

{¶ 8} Caplette was later interviewed at the Montgomery County Sheriff's Office by Detective Linda Shutts.  After being *Mirandized* by Detective Shutts, Caplette admitted that he accompanied Doling when they approached the victims' residence on the morning of January 12, 2017.  Caplette further admitted that prior to approaching the victims' residence, he and Doling had entered a shed located in the surrounding neighborhood and taken items from the shed.  Most importantly, Caplette told Detective Shutts that he helped Doling commit the burglary of the victims' residence insofar as acted as a lookout while Doling was inside the house.

{¶ 9} Caplette was indicted for one count of burglary on February 9, 2017.  At his arraignment on March 16, 2017, Caplette stood mute, and the trial court entered a plea of not guilty on his behalf.  On April 26, 2017, the State filed a notice of intent to use evidence of Caplette's prior acts during trial pursuant to Evid.R. 404(B).  In response, Caplette filed a motion in limine on May 5, 2017, in which he sought to prevent the State

from adducing evidence of his "prior bad acts" at trial. On October 11, 2017, the trial court overruled Caplette's motion in limine, thereby permitting the State to adduce evidence of Caplette's prior acts at trial. A jury trial was held which ended on October 12, 2017, and Caplette was found guilty of one count of burglary. On November 7, 2017, Caplette was sentenced to five years of community control sanctions.

{¶ 10} It is from this judgment that Caplette now appeals.

{¶ 11} Caplette's sole assignment of error is as follows:

THE TRIAL COURT ERRED WHEN IT PERMITTED THE STATE TO PRESENT EVIDENCE OF OTHER WRONGFUL ACTS COMMITTED BY THE DEFENDANT [WHICH] THE STATE USED TO SHOW THAT DEFENDANT ACTED IN CONFORMITY WITH THOSE OTHER ACTS IN COMITTING THE CRIME BEING TRIED.

{¶ 12} In his sole assignment, Caplette contends that the trial court erred when it denied his motion in limine and permitted the State to adduce evidence of his prior act of breaking into a shed immediately before he aided Doling in burglarizing the victims' residence on January 12, 2017. Caplette argues that the prior acts evidence presented by the State was only used to establish that he committed the burglary, thereby violating Evid.R. 404(B).

{¶ 13} Initially, we note that although Caplette filed a pre-trial motion in limine seeking exclusion of the prior acts evidence, he failed to object to the State's presentation of said evidence during trial. A decision on a motion in limine is a tentative, interlocutory, precautionary ruling by the trial court on the admissibility of evidence; as such, it cannot serve as the basis for an assignment of error on appeal. *State v. Baker*, 170 Ohio App.3d

331, 2006–Ohio–7085, 867 N.E.2d 426, ¶ 9 (2d Dist.), citing *State v. Grubb*, 28 Ohio St.3d 199, 503 N.E.2d 142 (1986). "In virtually all circumstances finality does not attach when the motion is granted. Therefore, should circumstances subsequently develop at trial, the trial court is certainly at liberty ' * * * to consider the admissibility of the disputed evidence in its actual context.' " *Id.*, quoting *Grubb* at 201–202. An appellate court need not review the propriety of a ruling on a motion in limine unless the claimed error is preserved by a timely objection when the issue is actually reached during the trial. *Id.* Failure to object to or proffer evidence at trial based on the disposition made in a preliminary motion in limine constitutes a waiver of any challenge. See *Baker*; *State v. Gray*, 2d Dist. Montgomery No. 26473, 2016–Ohio–5869, ¶ 29; *State v. Wilson*, 2d Dist. Montgomery No. 24577, 2012–Ohio–3098, ¶ 48.

{¶ 14} In the absence of an objection, we review the trial court's decision for plain error. In order to constitute plain error, the error must be an obvious defect in the trial proceedings, and the error must have affected substantial rights. *State v. Norris*, 2d Dist. Montgomery No. 26147, 2015–Ohio–624, ¶ 22; Crim.R. 52(B). Plain error should be noticed "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 15} Evid.R. 401 through 403 define relevance and provide for the function of relevance as the threshold standard for admissibility. Evid.R. 404(A) provides that, though it may be relevant, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." "The term 'character' refers to a generalized description of a person's

disposition or a general trait such as honesty, temperance, or peacefulness. Generally speaking, character refers to an aspect of an individual's personality which is usually described in evidentiary law as a 'propensity.' " Weissenberger's Ohio Evidence Treatise (2009 Ed.), Section 404.3.

{¶ 16} Evid.R. 404(B) states as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶ 17} Evid.R. 403(A) provides:

Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

{¶ 18} We have followed established precedent holding that Evid.R. 404(B) must be strictly construed against the admissibility of other-bad-act evidence. *State v. Shaw*, 2d Dist. Montgomery No. 21880, 2008-Ohio-1317, citing *State v. Broom*, 40 Ohio St.3d 277, 533 N.E.2d 682 (1988). "The courts in Ohio have long recognized that evidence of other crimes, wrongs or bad acts carries the potential for the most virulent kind of prejudice for the accused." *Id*. at ¶ 13. The Supreme Court of Ohio has established the following three-part test for the admission of Evid.R. 404(B) testimony:

The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action

more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. See Evid.R 403.

*State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20. "Prejudice occurs if there is a reasonable possibility that the error might have contributed to the conviction." *State v. Hardy*, 97 N.E.3d 838, 2017-Ohio-7635, ¶ 65, citing *State v. Cowans*, 10 Ohio St.2d 96, 104–105, 227 N.E.2d 201 (1967).

{¶ 19} At trial, Caplette's main defense was that he was unaware of what Doling intended to do when he approached the victims' residence. Relying on Evid.R. 404(B), the State argued to the trial court that evidence concerning Caplette's prior act of breaking into the shed with Doling was admissible to show knowledge and the absence of mistake or accident. In other words, Caplette's prior act of breaking into the shed showed that his commission of the conduct alleged in the indictment was not a mistake or accident and that he knew Doling intended to break into the victims' residence when they approached the back of the house after jumping over the fence and walking through the backyard.

{¶ 20} Upon review, we conclude that the trial court did not err, plainly or otherwise, when it permitted the State to introduce evidence of Caplette's prior act of breaking into

a shed immediately before he aided Doling in burglarizing the victims' residence on January 12, 2017. The evidence was adduced by the State in order to establish that Caplette had knowledge of what Doling intended to do when he unlawfully entered the victims' residence. At trial, Caplette testified regarding the events leading up to the burglary at the victims' residence. Specifically, Caplette testified that he and Doling decided to go for a walk at approximately 3:30 a.m. on January 12, 2017. Caplette further testified that at some point, he and Doling came upon a shed whereupon they both entered and stole items. After burglarizing the shed, Caplette testified that he and Doling continued to walk until they arrived at the victims' residence. The fact that he and Doling had just unlawfully entered and stolen items from the shed was clearly probative of whether Caplette had knowledge that Doling intended to burglarize the victims' residence when they arrived there.

Therefore, the evidence of Caplette's prior breaking and entering of the shed satisfied the first two steps of the *Williams* analysis. With respect to the third prong of the *Williams* analysis, exclusion of relevant evidence is mandatory where the "probative value [of the evidence] is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). For the evidence to be excluded on this basis, "the probative value must be minimal and the prejudice great." *State v. Morales*, 32 Ohio St.3d 252, 257, 513 N.E.2d 267 (1987). The introduction of evidence regarding Caplette's prior breaking and entering of the shed was relevant and not unfairly prejudicial to him. Evidence regarding this criminal behavior was highly probative as it established that Caplette had prior knowledge of Doling's intention to burglarize the victims' residence. Unfavorable evidence is not equivalent to unfairly

prejudicial evidence. *State v. Bowman*, 144 Ohio App.3d 179, 185, 759 N.E.2d 856 (12th Dist. 2001). Accordingly, we find the trial court did not err in admitting into evidence this prior bad act, as the danger of unfair prejudice was minimal and the evidence was clearly probative of whether Caplette had knowledge that Doling intended to burglarize the victims' residence when they arrived there.

{¶ 21} Caplette's sole assignment of error is overruled.

{¶ 22} Caplette's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and HALL, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Michael P. Allen
Christopher C. Green
Hon. Erik R. Blaine